UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON DIVISION

| | |
|---|---|
| KAREN BLAKEMAN (formerly, MADON), | ) ) ) |
| Plaintiff, | ) ) ) |
| V. | ) ) |
| WALTER T. HULETT, et al., | ) ) ) |
| Defendants. | ) |

Civil Action No. 6: 04-249-DCR

**MEMORANDUM OPINION AND ORDER**

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of the Defendants' motion for summary judgment. [Record No. 14] The Plaintiff's suit stems from the Defendants' failure to hire her as a guidance counselor at North Laurel Middle School. The Plaintiff has asserted claims for gender discrimination, age discrimination and retaliation. For the reasons discussed below, the Court will grant the motion, in part, and dismiss the claims of age discrimination and retaliation. However, the Court will deny the motion concerning the claim of gender discrimination.

**I.     BACKGROUND**

Plaintiff Karen Blakeman (Blakeman), formerly Karen Madon, was a teacher and guidance counselor employed by the Laurel County Board of Education (the Board) and was forty (40) years of age and older at the time of the events relevant to this action. Blakeman began this employment in 1979. Subsequently, she attained tenure and remained employed in the district for twenty-four years. Blakeman holds a Rank I teaching certificate and is licensed to work as a guidance counselor (grades: K-8). She also holds endorsements for Elementary

School Principal (grades: K-8) and Supervisor of Instruction, Elementary and Secondary. Blakeman worked for the Board as a classroom teacher for eighteen years, thirteen of which were spent as a teacher at North Laurel Middle School (NLMS). In 1997, she began working as a guidance counselor at London Elementary School. Blakeman worked in that position until September 10, 2003, when she resigned from her employment with Laurel County to take a teaching position in Jefferson County. She is now retired from teaching.

In 1992, Defendant David Hensley became assistant principal at NLMS. Hensley was later promoted to principal at the beginning of the 1994-95 school year. Pursuant to Kentucky law, the principal is charged with filling vacancies at the school after consultation with a site-based decision making council (SBC). The SBC's role is limited to "consulting" with the principal on personnel issues. The SBC is comprised of teachers and parents and acts as an advisor to the principal in the "hiring process." *See* K.R.S. § 160.345 (2)(h). The SBC at NLMS is comprised of six members: the principal (chairperson), three teachers, and two parents. The members are elected for one-year terms, which commence on July 1 and end on June 30 each year. Hensley was the principal during the events giving rise to this action.

From April 1998 through May 2003, the guidance counselor's position at NLMS became vacant four times. Blakeman applied for the counselor's position each time it was available. Blakeman initially applied for the position in May 1998 and was interviewed by the SBC, including Principal Hensley. Blakeman was not hired. Instead, Jeff Jackson (Jackson) was selected for the position. However, Jackson resigned from the guidance counselor's position after three weeks to take a position as an assistant principal at South Laurel High School.

After Jackson's resignation, Blakeman again applied for the vacant counselor's position. Although she was interviewed by the SBC, she did not received the promotion. Instead, Steve Morris (Morris) was selected. However, Morris resigned from the position in August 2002, after receiving a promotion to assistant principal at NLMS. Again, Blakeman applied for the counselor's position. By this time, Blakeman had five years of guidance counseling experience at London Elementary. The SBC, at this point, consisted of the following members: Hensley, Donna Allen, Brack Whitaker, Shannon Ball, Kyle Edwards, and Eileen Estridge. Susan Brashear, the other counselor at NLMS, was permitted to sit in during the interviews but was not allowed to participate in the consultation process. Tharon Hurley ("Hurley") was ultimately selected for the counselor's position. Hurley began working in October 2002 but resigned at the beginning of the 2003-04 school year after being hired as principal at Johnson Elementary School.

On May 16, 2003, Blakeman filed gender and age discrimination claims with the EEOC due to being denied the guidance counselor's position at NLMS on three occasions. She alleged that each time a younger, less-qualified male was hired. On May 20, 2003, the EEOC mailed a "Notice" to the Superintendent of the Laurel County School Board, informing him that Blakeman had filed this charge. Blakeman received her "Right to Sue" letters on the age and gender discrimination claims on March 3, 2004, and March 25, 2004, respectively.

In July 2003, the guidance counselor's position vacated by Hurley again became available. Blakeman was informed by the Central Office that her prior application was still valid. However, Blakeman did not receive an interview. Subsequently, Blakeman filed a

retaliation claim with the EEOC, alleging that she did not receive an interview because she had previously filed an EEOC complaint. With respect to the retaliation charge, the EEOC issued a "Determination" on March 18, 2004, finding that there was "reasonable cause to believe that [the Board] ha[d] violated Title VII by denying [Blakeman] an interview in retaliation for filing a discrimination complaint." [Record No. 39, Item IV] In the "Determination" letter, the EEOC noted that:

> [t]estimony obtained during the investigation confirms that members of the North Laurel Middle School Site-Based Decision Making Council were informed by a Respondent official prior to the selection process that [Blakeman] had filed a charge of discrimination against Respondent. Therefore, there is reasonable cause to believe that Respondent has violated Title VII by denying her an interview in retaliation for filing a discrimination complaint.

[Record No. 39, Item IV] On April 1, 2004, the Defendants' attorney responded by letter to the District Director of the EEOC, stating the position of the Board on the retaliation issue. In that letter, counsel noted that he had an "ethical and legal obligation" to inform the SBC that Blakeman had filed an EEOC complaint. He indicated, however, that there was no evidence that the SBC was influenced by this information. Subsequently, on May 17, 2004, the EEOC issued a "right to sue" letter regarding the retaliation claim.

Blakeman filed suit on June 1, 2004, asserting claims against for: (1) gender and age discrimination in violation of First and Fourteenth Amendments, Title VII, and the ADEA based on the Defendants' repeated failed to hire her for the guidance counselor's position; and (2) retaliation in violation of 42 U.S.C. § 1983, Title VII and the ADEA. The Plaintiff has also

asserted pendant state law discrimination claims pursuant to Sections One and Two of the Kentucky Constitution.[1]

## II. LEGAL STANDARD

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A dispute over a material fact is not "genuine" unless a reasonable jury could return a verdict for the nonmoving party. That is, the determination must be "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-52 (1986).

The moving party bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record that establish the absence of a genuine issue of material fact. *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415 (6th Cir. 2002). Once the movant has satisfied this burden, the non-moving party cannot rely upon the assertions in its pleadings; rather, that party must come forward with probative evidence, such as sworn affidavits, to demonstrate that there is a genuine issue of material fact. *Id*.; *Celotex*, 477 U.S. at 324. However, the trial court does not have a duty to search the entire record to establish that it is bereft of any genuine issue of material fact. *In re Morris*, 260 F.3d 654 (6th Cir. 2002). The

---

[1] The Defendants have not moved for judgment on the Plaintiff's claims pursuant to Sections One and Two of the Kentucky Constitution. Thus, the Court has not addressed the viability of these claims.

nonmoving party has an affirmative obligation to direct the court's attention to those specific portions of the record upon which it seeks to rely to create genuine issues of material fact. *Id.* In determining whether there are any genuine issues of material fact, the Court must review all the facts and the inferences drawn from those facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

### III.   ANALYSIS

Blakeman claims that the Defendants discriminated against her on the basis of her gender and age. Specifically, she alleges that she was discriminated against when the Defendants repeatedly failed to hire her for a guidance counseling position for which she was more qualified than the younger males selected. In addition, the Plaintiff claims that she suffered retaliation as a result of filing a claims of discrimination with the Equal Employment Opportunity Commission (EEOC). The Defendants have moved for judgment as a matter of law on the gender and age discrimination and retaliation claims, arguing that the Plaintiff has not put forth sufficient evidence to support these claims.[2]

### A.   *Legal Framework for the Gender and Age Discrimination Claims*

In *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), Supreme Court outlined the evidentiary framework for analyzing workplace discrimination actions. The *McDonnell Douglas*

---

[2]   The Defendants have also alleged that the Plaintiff's claims are time barred. However, they have failed to cite any persuasive authority to support this argument. Instead, they state that "[i]t is clear that the usual statute of limitations for claims made pursuant to the ADEA is two (2) years in most situations and three (3) years for 'willful violations.'" [Record No. 37, p. 34] Although they have cited a lengthy quotation from an unpublished Sixth Circuit case, the Defendants have not demonstrated how this case supports their argument that the Plaintiff's claims are untimely. In response, Blakeman argues that, under the "continuing violation" theory, her claims are not time barred. Having reviewed the authorities cited by the parties, the Court cannot conclude that Blakeman's claims are barred by the applicable statute of limitations.

burden-shifting analysis applies to "failure to promote" discrimination claims. *See Brown v. State of Tennessee*, 693 F.2d 600, 603 (6th Cir. 1982). Here, Blakeman alleges that the guidance counselor's position at NLMS was a promotion because it carried more extended days than her position as counselor at London Elementary and, therefore, paid a larger salary. The Defendants have not disputed that the NLMS position would have been a promotion for Blakeman. Thus, this Court will treat this action as a failure to promote case.

Under *McDonnell Douglas'* burden-shifting analysis, a plaintiff bears the burden of establishing by a preponderance of the evidence a prima facie case of discrimination by the defendant. *McDonnell*, 411 U.S. at 802. A plaintiff may establish a prima facie case either by presenting direct evidence of intentional discrimination by the defendant or by showing the existence of circumstantial evidence which creates an inference of discrimination. *McDonnell Douglas*, 411 U.S. at 802.

A plaintiff alleging discrimination *via* direct evidence is not subject to the *McDonnell Douglas* burden-shifting framework. "In discrimination cases, direct evidence is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 1999) (citations omitted); *see Norbuta v. Loctite Corp.*, 181 F.3d 102 (6th Cir. 1999) (unpublished) ("[D]irect evidence proves the existence of a fact without any inferences or presumptions."); *see also Manzer v. Diamond Shamrock Chems. Co.,* 29 F.3d 1078, 1081 (6th Cir. 1994) (evidence that requires the jury to infer a fact is not direct evidence). "Once there is credible direct evidence, the burden of persuasion shifts to the defendant to show

that it would have terminated the plaintiff's employment had it not been motivated by discrimination." *Jacklyn*, 176 F.3d at 926 (citations omitted). In *Price Waterhouse v. Hopkins,* 490 U.S. 228 (1989), the Supreme Court held that "[i]n saying that gender played a motivating part in an employment decision, we mean that, if we asked the employer at the moment of the decision what its reasons were and if we received a truthful response, one of those reasons would be that the applicant or employee was a woman." *Id.* at 250 (footnote omitted).

A plaintiff relying on circumstantial evidence must first establish a prima facie case of discrimination. In a failure to promote case, a plaintiff must show that: (1) she was a member of a protected class; (2) she was qualified for and applied for a promotion; (3) she was considered for and denied the promotion; and (4) that a similarly-situated non-protected employee was promoted at the time the plaintiff's request for promotion was denied. *Brown*, 693 F.2d at 603. A modified *McDonnell Douglas* analysis is used in age discrimination cases. A plaintiff alleging a claim under the ADEA must establish a prima facie case by showing that: (1) she was at least 40 years old at the time of the alleged discrimination; (2) she was qualified for and applied for a promotion; (3) she was considered for and denied the promotion; and (4) that the successful applicant was substantially younger than the plaintiff. *See Barnett v. Dep't of Veterans Affairs*, 153 F.3d 338, 341 (6th Cir. 1998). If a prima facie case of gender or age discrimination is established, the employer has the burden of coming forward with a legitimate, nondiscriminatory reason for the adverse employment action. *McDonnell Douglas*, 411 U.S. at 802. The employer need not persuade the court that it was "actually motivated by the proffered reason" but the "explanation provided must be legally sufficient to justify a judgment for the

[employer]." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254-55 (1981). To satisfy this burden, the employer must clearly articulate, through introduction of admissible evidence, the non-discriminatory reasons for its employment decision.

If the employer offers such evidence, the plaintiff has the burden of proving that the stated reason is merely a pretext for discrimination. In other words, the burden shifts back to the plaintiff to demonstrate that the discrimination was a determinative factor in the employment decision. *McDonnell Douglas*, 411 U.S. at 804-05.

### 1. *Evidence Relating to the Gender Discrimination Claim*

In this case, Blakeman argues that the record contains direct evidence of gender discrimination. In other words, the Plaintiff contends that there is evidence which establishes that unlawful gender discrimination was at least a motivating factor in the Board's decision not to promote her to the guidance counselor's position at NLMS. *Laderach v. U-Haul of North western Ohio*, 207 F.3d 825, 829 (6th Cir. 2000). Blakeman's direct evidence of discriminatory animus relates solely to her gender discrimination claim. Specifically, she notes that two individuals, Susan Brashear[3] and Victoria Hughes,[4] testified that on two different occasions Principal Hensley stated that he preferred to hire a male for the guidance counselor's position. Brashear testified that when Mr. Black turned in his retirement papers, she, Hensley, and several other people were standing outside her office discussing Black's retirement. She stated that

---

[3] NLMS had two guidance counselor's positions, one of which was held by Susan Brashear. The Plaintiff applied for the second position which, as discussed herein, became vacant four times during the period from April 1998 through May 2003.

[4] In 1998, Victoria Hughes was a teacher representative on the SBC.

Hensley commented that "it would be good if we had a man in that position, you know, for the males in that school, since they already ha[ve] a female counselor." [Brashear depo., pp. 15-16] Victoria Hughes testified that Hensley made a similar comment a few weeks later to her. Specifically, Hughes testified that the SBC initially decided to hire Blakeman for the August 1998 vacancy. [Hughes, depo., p. 13]   However, Hughes further testified that Hensley approached her the following day and stated that was "not going to go with [the council's] recommendation" but was going to hire Morris because he felt that a man would be better for the position. [Hughes depo., pp. 17-18]

 Blakeman has also identified circumstantial evidence that she claims creates an inference of discrimination, particularly when considered with the direct evidence in the record. Specifically, she has presented evidence demonstrating that she had more teaching and counseling experience than the male applicants chosen for the position.  When Blakeman initially applied for the guidance counselor's position, she had 19 years teaching experience. In addition, she had approximately one year of experience as a guidance counselor (at London Elementary). Jackson, who was hired for the first vacancy, had been a teacher for six years and had three experience as a guidance counselor (at Laurel County Day treatment).  Morris, who was hired for the second vacancy, was initially hired as a substitute teacher in 1992.  He then served as the resource center director.  Morris had no prior counseling experience at the time he was hired.  In fact, he did not obtain his counseling certification until July of 1998, which was the same month that he was hired by the Board.  The third vacancy was filled by Tharon Hurley. By this time, Blakeman had five years of experience as a counselor. In contrast, Hurley had one

year of counseling experience during the regular school year and three years experience as a summer school counselor. As a summer school counselor, Hurley only worked 9-12 weeks during the summer. Thus, based on the evidence of record, Blakeman had more teaching experience than any of the men hired for the position. And, with the exception of Jackson, she had more counseling experience as well.

To counter this evidence, the Defendants allege that Blakeman did not perform as well in the interview as the chosen applicants. In addition, although the Defendants have not disputed that Blakeman had more seniority and counseling experience, they contend that she was not as qualified as Jackson, Morris and Hurley because she did not have as much experience with the STI system.[5] Blakeman, however, has filed an affidavit stating that she had "extensive experience with STI." [Record No. 39, Item VI] She notes that she used STI at her teaching position at NLMS, at her counseling internship at NLMS, and at her guidance counseling position at London Elementary. The Defendants have attempted to refute the Plaintiff's affidavit with an affidavit from Deputy Superintendent David Young. Through this affidavit, Young states that:

> Blakeman would have had no training relating to STI during the time she was in her guidance counseling internship at NLMS and little knowledge of STI or the changes of STI during the years she worked at London Elementary School as a guidance counselor since she had little use of STI as an elementary guidance counselor.

[Record No. 40, Ex. 1] The extent of Blakeman's training and experience on the STI system is a factual issue that this Court may not resolve in addressing a motion for summary judgment.

---

[5] STI is the computerized attendance and grading system used at NLMS.

Instead, at this stage in the proceedings, the Court must view the evidence in a light most favorable to Blakeman. Therefore, based on the record at this stage of the proceedings, it appears that a jury could find that Blakeman was more qualified than any of the three men selected for the position.

Thus, when considering Blakeman's *apparent* superior qualifications together with the discriminatory statements made by Hensley, her failure to receive the promotion to counselor is suspect. The Defendants argue that summary judgment is proper because they have articulated legitimate business reasons for not promoting Blakeman to NLMS guidance counselor (*i.e.,* that other candidates were more impressive during the interview and that she had less STI training). The Court, however, does not agree. Viewing the evidence in the light most favorable to Blakeman, this Court finds that, at trial, Blakeman may be able to prove that gender played a part in the Defendants' decision not to promote her.[6] Therefore, the motion relating to Blakeman's gender discrimination claim will be denied.

## 2.  *Evidence Relating to the Age Discrimination Claim*

Blakeman has not presented any direct evidence with respect to her age discrimination claim. Rather, she has attempted to rely on circumstantial evidence to create an inference of discrimination based on her age. In such situations, the court must engage in the *McDonnell Douglas* burden shifting analysis. In determining whether Blakeman has established a prima facie case, this Court must first consider whether she is member of a protected class. At the time

---

[6] The Plaintiff's gender need not be the sole reason for the failure to receive the promotion in order for the Defendants to be liable under Title VII. Rather, it need only be a "motivating factor" as set out in Title 42, United States Code, Section 2000e-2(m); *Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003).

she applied for the counselor's position, she was forty years of age or older.[7] Thus, she has established that she is a member of a protected class with respect to her age discrimination claim.

Under the second prong of this analysis, Blakeman must establish that she was qualified and applied for the position. During the prima facie stage, the court focuses on the plaintiff's objective qualifications to determine whether she is qualified for the relevant job. *Wexler v. White's Fine Furniture*, 317 F.3d 564, 575 (6th Cir. 2003). A plaintiff may demonstrate that she is qualified by presenting credible evidence that her qualifications are at least equivalent to the minimum objective criteria required for employment for the relevant position. *Id*. at 575-76. The inquiry should focus on criteria such as education, experience in the industry, and possession of the required general skills. *Id*. at 576. In the instant case, the Defendants have not taken issue with Blakeman's assertion that she was qualified for the counselor's position at NLMS. At the time Blakeman applied for this position, she was a counselor at London Elementary. She had previously obtained her counseling certification and had completed a counseling internship at NLMS. Thus, Blakeman has established that she was qualified for the position.[8]

Under the third element, the Plaintiff must show that she was considered for and denied the promotion. The Plaintiff has presented proof that she was considered for the counselor's

---

[7] Blakeman was forty years old when she first applied for the guidance counselor's position. She later applied for the position three more times over the next five years.

[8] The Defendants have objected to the Plaintiffs' contention that she was "more qualified" than the applicants that received the counselor's position. This issue, however, is relevant under the fourth prong of the prima facie case in determining whether an equally or less qualified employee, not in the protected class, was given the position.

position three out of four times.[9]  Further, it is uncontested that she was never hired for the position.  Therefore, the Blakeman has satisfied the third element by establishing that she was considered for the position but was denied the promotion.

Under the fourth prong of the prima facie case for age discrimination, Blakeman must show that a "substantially younger" person received the promotion.  *Bush v. Dictaphone Corp.*, 161 F.3d 363, 368 (6th Cir. 1998).  In *Bush*, the Sixth Circuit held that:

> Assuming that Bush met the first three prongs of the *McDonnell Douglas* test, he was then required to show that he was replaced by someone substantially younger.  When Bush was demoted, he was replaced by a woman less than five years younger, who was herself more than forty years old.  The district court held that such a small age gap did not meet the substantially younger standard.  In the absence of any proof to the contrary, we agree that no reasonable jury could find that Bush's 41 year old replacement was substantially younger than Bush (then 46 years old).  As a result, with regard to his demotion, Bush failed to make out a prima facie claim under *McDonnell Douglas*.

*Id.*; *see also Williams v. Raytheon Co.*, 220 F.3d 16, 20 (1st Cir. 2000)(three year age difference is too insignificant to support a prima facie case of age discrimination); *Hoffmann v. PRIMEDIA Special Interest Publications*, 217 F.3d 522, 524-25 (7th Cir. 2000) (plaintiff failed to establish prima facie case of age discrimination where replacement was only three years younger); *Schiltz v. Burlington N.R.R.*, 115 F.3d 1407, 1413 (8th Cir. 1997) (five year age difference not enough to make out a prima facie case for age discrimination).

As noted above, Blakeman was forty or older when she applied for the counselor's position.  The first position that Blakeman applied for was filled by Jeff Jackson who was 28 at

---

[9]  With respect to the fourth time the position became available, Blakeman has alleged that she was not considered in retaliation for filing an EEOC complaint.  This allegation is the subject of the retaliation charge.

the time he was transferred to NLMS for the guidance counselor's position.  After Jackson was promoted to Assistant Principal, the Board hired Steve Morris.  At the time he was hired, Morris was 29 years old.  Subsequently, Morris was promoted to Assistant Principal.  At that point, the Board selected Tharon Hurley to replace him.  Hurley was 32 years of age when he was hired for the position.  Because Blakeman has presented proof that the individuals promoted were substantially younger than her, the Court finds that she has satisfied the fourth element of the prima facie case.

Because Blakeman has established a prima facie claim of age discrimination, the Defendants are required to show a legitimate, non-discriminatory reason for not promoting her.  The Defendants claim that Blakeman was not hired for the 1998 vacancy (when Black retired) because the superintendent decided to transfer Jackson from the Day Treatment Center.  Although the SBC had agreed to hire Blakeman, Hensley stated that he did not want to go against the superintendent.  Therefore, the decision was made to hire Jackson.  With respect to the vacancy created by Jackson's promotion, Hensley testified that he and the SBC decided to hire Morris because he was "much better in the interview" than Blakeman. [Hensley depo., p. 81]  Finally, with respect to the vacancy created by Morris' promotion, Hensley testified that the decision to hire Hurley was based on the fact that he had a "good reputation being a counselor [at his prior school]" and that he and the members of the SBC were impressed by Hurley's interview.  On the other hand, he stated that Blakeman did not have "much enthusiasm" during her interview and did not have a "vision for the students." [Hensley depo., p. 93]   In addition,

the Defendants assert that the individuals selected for the counselor's position had more experience with the STI system and with the scheduling of students at the middle school.

Inasmuch as the Defendants have articulated non-discriminatory reasons for not promoting Blakeman, the burden shifts to the Plaintiff "to produce evidence that the [explanations] [are] false and that [age] discrimination was the real reason" for their actions. *See Gragg v. Somerset Technical College*, 373 F.3d 763, 768 (6th Cir. 2004). Blakeman is required to presented evidence sufficient to show that the explanation offered by the Defendants is "unworthy of credence." *Texas*, 450 U.S. at 256; *Manzer*, 29 F.3d at 1083. In *Manzer*, the Sixth Circuit noted that, "[t]o make a submissible case" on the issue of pretext, the plaintiff must show by a preponderance of the evidence either: (1) that the proffered reasons had no basis in fact; (2) that the proffered reasons did not actually motivate the employment action; or (3) that they were insufficient to motivate the employment action. *Manzer*, 29 F.3d at 1084.

After considering the evidence put forth by Blakeman, the Court finds that she has failed to present sufficient evidence for a reasonable jury to reject the Defendants' proffered reasons for its actions as it relates to her *age* discrimination claim. Unlike the gender claim, Blakeman has relied solely on evidence that demonstrates that those individuals chosen for the position were younger and less qualified (viewing the evidence in a light most favorable to the Plaintiff). This alone is insufficient to create an inference of that Blakeman was not promoted based on her age. Accordingly, the Court finds that the Defendants are entitled to judgment as a matter of law on the Plaintiffs' claim for age discrimination under the ADEA.

> B.   *Legal Framework for the Retaliation Claim*

The Plaintiff also claims that she suffered retaliation as a result of filing claims with the EEOC. In order to establish a prima facie case of retaliation, a plaintiff must show that: (1) she engaged in activity protected by Title VII; (2) the exercise of her civil rights was known to the defendant; (3) thereafter, the defendant took an employment action adverse to the plaintiff; and (4) there was a causal connection between the protected activity and the adverse employment action. *See Akers v. Alvey*, 338 F.3d 491, 499 (6th Cir. 2003)*; Harrison v. Metropolitan Gov't,* 80 F.3d 1107, 1118 (6th Cir. 1996). The burden of establishing a *prima facie* case in a retaliation action is not onerous, but one easily met. *See Nguyen v. Cleveland*, 229 F.3d 559, 566 (6th Cir. 2000). Once a prima facie case is established, the defendant must offer a legitimate non-discriminatory reason for the adverse employment action. *Akers*, 338 F.3d at 499. Next, the plaintiff must show that the proffered reason is mere pretext for intentional discrimination. *Id*.

*1.     Evidence Relating to the Retaliation Claim*

With respect to the first element of Blakeman's retaliation claim, the Plaintiff has alleged, and the Defendants have not disputed, that the filing a of gender or age discrimination claim with the EEOC is activity protected by Title VII. Regarding the second element, Blakeman has presented evidence that Hensley and members of the SBC were aware, prior to the time they began interviewing for the 2003 vacancy, that Blakeman had filed an EEOC complaint. Specifically, Hensley testified that counsel for the Defendants informed him about the EEOC complaint before the August 2003 vacancy was posted. [Hensley depo., p. 106] Although the SBC members testified that they were not aware that Blakeman had filed the gender and age discrimination complaint, Blakeman has offered evidence contradicting this testimony.

Specifically, she has presented a letter written by the Defendants' counsel to Danny Harter, District Director of the EEOC. In that letter, counsel admits that he informed the SBC that Blakeman had filed the complaint. The letter provides, in relevant part, that:

> The Determination that was made in this case seems to hinge on the single fact that the Council was informed by me prior to the interview process (selection process) that Blakeman had filed a charge of discrimination against the same North Laurel Middle School Council previously. I had both an ethical and legal obligation to tell the Council that Blakeman had filed the first EEOC complaint.

[Record No. 39, Item III] Viewing the facts in the light most favorable to Blakeman, the Court finds that she has presented evidence that would allow a jury to find that Hensley and the members of the SBC were aware that Plaintiff had filed the EEOC complaint. Additionally, there is no dispute that Blakeman was qualified and applied for the counselor's position for the August 2003 school year. However, she was not interviewed for that position.

To establish the causal connection required in the fourth prong, a plaintiff must produce sufficient evidence from which an inference could be drawn that the adverse action would not have been taken had the plaintiff not filed a discrimination action. *See EEOC v. Avery Dennison Corp.*, 104 F.3d 858, 861 (6th Cir. 1997); *Jackson v. RKO Bottlers,* 743 F.2d 370, 377 (6th Cir. 1984). Although no one factor is dispositive in establishing a causal connection, evidence that defendant treated the plaintiff differently from similarly situated employees or that the adverse action was taken shortly after the plaintiff's exercise of protected rights is relevant to causation. *See Nguyen*, 229 F.3d at 562-63. However, while temporal proximity "between protected activity and adverse employment action may give rise to an inference of a causal connection . . . temporal proximity alone will not support an inference in the face of compelling evidence

that the defendant company encouraged complaints about the relevant grievance." *Fenton v. HiSAN, Inc.*, 174 F.3d 827, 832 (6th Cir.1999) (quotation omitted); *see also Nguyen*, 229 F.3d at 566 ("temporal proximity alone will not support an inference of retaliatory discrimination when there is no other compelling evidence") (quotation omitted).

To support her claim that there was a causal connection the filing of the EEOC complaint and SBC's failure to interview her for the August 2003 position, Blakeman relies primarily upon the temporal proximity between the two events. The only other evidence offered to support her retaliation claim is evidence relating to her qaulaifications for the position. Specifcially, Blakeman argues that she was objectively more qualified than the person hired for the position. This evidence, however, does not create an inference that her failure to be interviewed for the position was in retaliation for filing charges of discrimination with the EEOC. In addition to the evidence of temporal proximity, the Plaintiff has failed to put forth any evidence of retaliatory conduct by Hensley or members of the SBC. Thus, the Court finds that the Plaintiff has failed establish a prima facie case of retaliation inasmcuh as she has not shown a causal connection between her protected activity (*i.e.*, the filing of the EEOC complaint) and the alleged discriminatory act of failing to consider her for the guidance counselor's position.

Even if this Court concluded that she has presented a prima facie case, she has not presented any evidence to counter the Defendants' legitimate, non-discriminatory reasons for not interviewing her for the August 2003 position. Hensley testified that she was not selected for an interview because the SBC had previously interviewed her three times. He stated that he and the SBC felt as though they weren't "getting what [they] wanted for a counselor." [Hensley

-19-

depo., p. 102] Shannon Ball, a teacher representative, testified that she had previously interviewed Blakeman and felt she wasn't "motivated" to do the job. [Ball depo., p. 13]  Brack Whitaker, a teacher representative, and Eileen Estridge, a parent representative, testified that Blakeman was not interviewed because the council was looking for someone with high school experience, which Blakeman did not possess.  [Brack depo., p. 17; Estridge depo., p. 7-8] Blakeman has failed to put forth any evidence to demonstrate that these reasons are merely a pretext a for not interviewing her.  Thus, the Court finds that summary judgment is appropriate on the Plaintiff's retaliation claim.

### IV.   CONCLUSION

For the reasons discussed herein, it is hereby

**ORDERED** as follows:

(1)    The Defendants' motion for summary judgment [Record No. 14] regarding the Plaintiff's gender discrimination claim is **DENIED**;

(2)    The Defendants' motion for summary judgment [Record No. 14] regarding the Plaintiff's age discrimination claim is **GRANTED**; and

(3)    The Defendants' motion for summary judgment [Record No. 14] regarding the Plaintiff's retaliation claim is **GRANTED**.

This 31st day of October, 2005.



Signed By:
*Danny C. Reeves* DCR
United States District Judge